IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **MARTHA FAYE VANZANT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00053 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Vernon M. Williams, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Shawn C. Carver, Assistant Regional Counsel, and Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Martha Faye Vanzant filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Vanzant filed for benefits on October 30, 2008, alleging that she became disabled on December 31, 2004. Her claim was denied initially and upon reconsideration. Vanzant received a hearing before an administrative law judge ("ALJ"), during which Vanzant, represented by counsel, and a vocational expert testified. The ALJ denied Vanzant's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Vanzant then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Vanzant was born on January 8, 1950, making her an individual of advanced age under the regulations. 20 C.F.R. § 404.1563(e) (2011). Vanzant has an eleventh grade education[1] and has worked in the past as a hair dresser, a theater manager, and a medical office manager. She originally claimed she was disabled due to numbness and burning in her legs, numbness in her hands, leg and arm pain, lower back pain, neck pain, shoulder pain, headaches, fibromyalgia, diabetes, and osteoarthritis.

---

[1] Vanzant also has special training in cosmetology and medical office management.

From September 2004 through May 2007, Jonathan T. Swank, M.D., was Vanzant's treating physician. During this time period, Dr. Swank addressed conditions and complaints including right upper quadrant pain radiating to the back, hypertension, hyperlipidemia, intermittent neck pain, hot flashes, left leg and thigh pain, numbness and tingling in the hands, and insomnia related to anxiety over Vanzant's husband's medical situation. He prescribed Menest, Atenolol, and Lorazepam.

Vanzant underwent testing at Johnston Memorial Hospital in September 2004 and September 2005. On both of these occasions, abdominal ultrasounds showed mild fatty infiltration of the liver.

In October 2005, Vanzant sought treatment with Paul C. Armstrong, M.D., upon referral by Dr. Swank, for complaints of right upper quadrant pain. A neurologic examination was normal with no sensory or motor deficits in the upper or lower extremities. Dr. Armstrong diagnosed Vanzant with chronic cholecystitis and biliary dyskinesia. In November 2005, Dr. Armstrong performed laparoscopic cholecystectomy.

In March 2006, Vanzant complained for the first time of "intermittent problems with numbness in her hands"; however, Dr. Swank noted that Vanzant's hands appeared normal. (R. at 255.) In June 2006, Vanzant complained again of paresthesias in her hands with numbness and tingling in all fingers. Dr. Swank's

examination revealed minimal tenderness, no frank arthritic changes, and no change in grip strength. (R. at 253.) He recommended Ibuprophen and Tylenol.

Vanzant received emergency room treatment in June 2007, due to complaints of right side pain. A CT scan of the abdomen and pelvis revealed an eight millimeter incidental benign lesion in the right lobe of the liver, probably representing a small cyst. Vanzant was diagnosed with acute abdominal pain, prescribed Ultram, and discharged from the hospital.

From March 2008 through June 2010, Vanzant again sought treatment with Dr. Swank. During this time period, Vanzant complained of multiple joint aches, pain and tenderness in the toes with numbness and cold insensitivity, pain in the hands and wrists, arthritis, diabetes, depression symptoms, intermittent anxiety, a thyroid nodule, and pain in the shoulders, neck, legs, lower back, and knee.

In October 2008, Vanzant was examined by Michael W. Bible, M.D., for complaints of pain in the hands, primarily in the thumbs, and the right foot. Dr. Bible diagnosed Vanzant with Sjogren's syndrome, Morton's neuroma of the right foot between the second and third metatarsal shafts, inflammatory osteoarthritis of the hands, and tenosynovitis of the proximal aspect of both thumbs. He referred Vanzant to physical therapy and prescribed Plaquenil.

Vanzant was treated at Boothe Chiropractic Clinic in September 2009. Significant findings included moderate to severe degenerative disc disease at C5-

C6, mild to moderate degenerative disc disease at L5-S1, and vertebral subluxation complex at C5, C6, L5, and S1.

In June 2010, Vanzant underwent a physical residual functional capacity assessment. Dr. Swank indicated that Vanzant could occasionally lift or carry less than ten pounds, could sit or stand less than two hours in an eight-hour workday, and could rarely twist, stoop, crouch, squat, or climb ladders. Dr. Swank opined that Vanzant should avoid all exposure to cigarette smoke and extreme cold and heat, and should avoid even moderate exposure to perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. He also noted that Vanzant would need a job that permits periods of walking around approximately every fifteen minutes during an eight-hour workday, and shifting positions at will from sitting, standing, or walking.

At the administrative hearing held in June 2010, Vanzant testified on her own behalf. Vanzant confirmed that, since she stopped working in 2004, she has been a full-time caregiver for her sick husband. Ann Marie Cash, a vocational expert, also testified. She classified Vanzant's past work as an office manager as sedentary, skilled; her past work as a theater manager as light, skilled; and her past work as a hair dresser as light, skilled.

After reviewing all of Vanzant's records and taking into consideration the testimony at the hearing, the ALJ determined that she had severe impairments of

degenerative disc disease, hypertension, and gastritis, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Vanzant's limitations, the ALJ determined that Vanzant retained the residual functional capacity to perform a range of light work that involved only occasionally crouching, crawling, and stooping. The ALJ stated that Vanzant could not climb ladders, work at heights, operate dangerous machinery, or work around vibrating machinery, and that she would need to change postures (sitting/standing/walking) briefly without leaving her workstation, one time each hour. The ALJ also noted that Vanzant would have a slight deficit in using her hands for repetitive fine manipulation less than twenty percent of the day. The vocational expert testified that someone with Vanzant's residual functional capacity could perform her past relevant work as an office manager, a theater manager, and a hair dresser. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Vanzant was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Vanzant argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to accord proper weight to the medical opinion of her treating physician, Dr. Swank. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866,

868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Vanzant argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the medical opinion of her treating physician, Dr. Swank. Specifically, Vanzant asserts that the ALJ

failed to properly consider Dr. Swank's physical residual functional capacity assessment of Vanzant.

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. § 404.1527(c) (2011). Although treatment relationship is a significant factor, the ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, substantial evidence supports the ALJ's evaluation of Dr. Swank's opinion. First, Dr. Swank's residual functional capacity assessment, dated June 9, 2010, was made nearly three years after Vanzant's date last insured, December 31, 2007. There is no indication that Dr. Swank's opinion was intended to reflect Vanzant's limitations between December 31, 2004, and December 31, 2007, which is the relevant period of review.

Even if Dr. Swank's assessment was intended to be retrospective, a treating physician's retrospective opinion may only be considered where it is corroborated by contemporaneous evidence. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Vanzant's medical evidence from the relevant time period does not corroborate Dr. Swank's residual functional capacity assessment. For example, in 2004 and 2005, Vanzant saw Dr. Swank on three occasions without mentioning

any complaints of leg or hand numbness. (R. at 256-58.) Additionally, hospital records from October 2005 confirm that Vanzant's neurologic examination was normal with no sensory or motor deficits in the upper or lower extremities. (R. at 209.) Dr. Swank did note that Vanzant had "some intermittent problems" with her hands and an isolated complaint of leg pain in 2006 and 2007, but Vanzant's evaluations revealed essentially normal findings. (R. at 252-53.) Vanzant had no frank arthritic changes, no grip strength problems, and minimal tenderness. (R. at 253.) Furthermore, diagnostic testing indicated only a moderate degree of degenerative disc disease. Thus, Dr. Swank's contemporaneous treatment notes are devoid of objective findings supporting any limitations precluding work.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   June 21, 2012

/s/  James P. Jones
United States District Judge